**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| UNIVERSITY SPINE CENTER as ANTHONY T.'s attorney-in-fact,<br><br>    *Plaintiff*,<br><br>  v.<br><br>EDWARD DON & COMPANY, LLC, and CIGNA HEALTH AND LIFE INSURANCE CO.,<br><br>    *Defendants*. | Civil Action No. 22-3389<br><br>**OPINION** |

**John Michael Vazquez, U.S.D.J.**

   In this action, Plaintiff University Spine Center, as Anthony T's ("Patient") attorney-in-fact, brings a claim against Defendants Edward Don & Company, LLC ("Edward Don") and Cigna Health and Life Insurance ("Cigna") (collectively "Defendants") for unpaid benefits.   Plaintiff's previous complaint was dismissed pursuant to Rule 12(b)(6).  D.E. 24, 25.  Currently pending before the Court is Defendants' motion to dismiss Plaintiff's Second Amended Complaint ("SAC").  D.E. 42.  The Court reviewed the parties' submissions in support and in opposition,[1] and considered the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b).  For the reasons stated below, Defendants' motion to dismiss is **GRANTED**.

---

[1] Defendants' brief will be referred to as "Defs. Br." (D.E. 42-1); Plaintiff's opposition brief will be referred to as "Plf. Opp." (D.E. 45); and Defendants' reply brief will be referred to as "Defs. Reply." (D.E. 48).

## I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY[2]

Plaintiff, an out-of-network medical practice, treated Patient, who had health insurance through his employer, Edward Don (the "Plan"). SAC ¶¶ 9, 14-15. Cigna is the claims administrator for the Plan. *Id.* ¶ 9. On September 23, 2019, Patient presented to the operating room at St. Joseph's University Medical Center "with severe recurrent lumbar disk herniation at L5-S1 with greater left than right lower extremity radiculopathy, lumbar degenerative disc disease L3-S1, and post laminectomy syndrome." *Id.* ¶ 11 (citing Ex. B).[3] That same day, Plaintiff "provided medically necessary and reasonable services"[4] to Patient. *Id.* ¶ 12. Plaintiff billed Cigna $340,316.00 for the services rendered by the primary surgeon and assistant surgeon. *Id.* ¶ 16 (citing Ex. E). The bill reflects that eight CPT codes were billed for the primary surgeon's services

---

[2] The factual background is taken from Plaintiff's SAC, D.E. 34, as well as the exhibits attached to it. When reviewing a motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Additionally, a district court may consider "exhibits attached to the complaint and matters of public record" as well as "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc*., 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted).

[3] The Court's citations to exhibits correspond to the exhibits to Plaintiff's Second Amended Complaint and the page numbers cited correspond with those in the ECF header. *See* Ex. A–F (D.E. 34-1–34-6).

[4] The services included the following:

> [R]evision of lumbar laminectomy with decompression of the L5 and S1 nerve roots, posterior spinal fusion at L5-S1, transforaminal interbody fusion at L5-S1, placement of an interbody spacer via left foraminal approach at L5-S1, posterior spinal instrumentation L5-S1 using Stryker posterior titanium system, resection of L5 pars intraarticularis and S1 superior articulating process at L5-S1 using osteotome, use of fluoroscopy and interpretation, use of neurophysiologic monitoring and direct stimulation of posterior elements, use of microscope and microscopic techniques.

SAC ¶ 13 (citing Ex. B).

(63047, 22633, 22853, 22840, 20930, 20936, 69990, and 77003) and that five CPT codes were billed for the assistant surgeon's services (22633, 63047, 22840, 22853, and 69990).  SAC ¶¶ 24, 25; Ex. E.

The Plan reimburses healthcare providers at different rates depending on whether they are in-network or out-of-network.  For out-of-network outpatient professional services,[5] the Plan will reimburse "60% of the Maximum Reimbursable Charge" after the plan deductible is met.  Ex. D at 13, 18.

The Plan defines the "Maximum Reimbursable Charge" as follows:

> The Maximum Reimbursable Charge for covered services is determined based on the lesser of:
> - the provider's normal charge for a similar service or supply; or
> - a policyholder-selected percentage of a schedule that Cigna has developed that is based upon a methodology similar to a methodology utilized by Medicare to determine the allowable fee for the same or similar service within the geographic market.
>
> The percentage used to determine the Maximum Reimbursable Charge is listed in The Schedule.
>
> In some cases, a Medicare based schedule will not be used and the Maximum Reimbursable Charge for covered services is determined based on the lesser of:
> - the provider's normal charge for a similar service or supply; or
> - the 80th percentile of charges made by providers of such service or supply in the geographic area where it is received as compiled in a database selected by Cigna.  If sufficient charge data is unavailable in the database for that geographic area to determine the Maximum Reimbursable Charge, then data in the database for similar services may be used.

---

[5] The Plan defines "Covered Expenses" as "the expenses incurred by or on behalf of a person for the charges listed below if they are incurred after he becomes insured for these benefits," to the extent that "the services or supplies provided are commended by a Physician, and are Medically Necessary for the care and treatment of an Injury or a Sickness, as determined by Cigna."  Ex. D. at 29.

> The Maximum Reimbursable Charge is subject to all other benefit limitations and applicable coding and payment methodologies determined by Cigna.

SAC ¶ 19 (quoting Ex. D at 60); *see also* Ex. D. at 14.

The "percentage of a schedule" under the Plan is set at 110%. Ex. D at 14. Thus, Cigna will calculate the "Maximum Reimbursable Charge" of out-of-network services by taking whatever amount is less between (1) "the provider's normal charge for a similar service" and (2a) 110% of a schedule similar to Medicare's, or (2b) "[i]n some cases," "the 80th percentile of charges made by providers" of such services in the geographic area. After the "Maximum Reimbursable Charge" is calculated, Cigna will then pay out 60% of that amount after the patient's deductible is met.[6]

The Plan also provides as follows:

> The Plan Administrator delegates to Cigna the discretionary authority to interpret and apply plan terms and to make factual determinations in connection with its review of claims under the plan. Such discretionary authority is intended to include, but not limited to, the determination of the eligibility of persons desiring to enroll in or claim benefits under the plan, and the computation of any and all benefit payments. The Plan Administrator also delegates to Cigna the discretionary authority to perform a full and fair review, as required by ERISA, of each claim denial which has been appealed by the claimant or his duly authorized representative.

Ex. D at 55.

---

[6] By way of example, assume that (1) a provider's normal charge for a similar service is $80; (2) the rate on the Medicare-based schedule rate is $30, thus 110% of the Medicare-based rate is $33; and (3) the 80th percentile of charges made by providers of such services in the geographic area is $70; and (4) the patient's deductible has been met. If Cigna follows the first method and takes the lesser of the provider's normal charge ($80) and 110% of a schedule similar to Medicare's ($33), Cigna will select the Medicare-based rate because it is less, and will pay out 60% of the $33, resulting in a payment of $19.80. On the other hand, if Cigna is not using the Medicare-based rate, Cigna will select the 80th percentile of similar charges in the area ($70) over the provider's normal charge for a similar service ($80) because it is less, and will pay out 60% of the $70, resulting in a payment of $42.

4

On February 12, 2020, Cigna sent Plaintiff an Explanation of Benefits ("EOB") and remitted reimbursement in the amount of $6,184.46. *Id*. ¶ 17. Plaintiff alleges that this was "an underpayment of approximately $167,512.07, considering applicable pay rates and reductions" because the services qualified as covered medical procedures and therefore should have been reimbursed in accordance with the "Maximum Reimbursable Charge" as defined by the Plan. *Id.* ¶¶ 15, 18-19. Plaintiff adds that of the eight codes billed for the primary surgeon's services, four "have been denied completely, and the remaining four codes have been woefully underpaid," and of the five codes billed for the assistant surgeon's services, two were "denied completely and the remaining three have been woefully underpaid." *Id.* ¶ 21.

Plaintiff asserts that it appealed Cigna's determination on multiple occasions and exhausted its administrative remedies.[7] *Id.* ¶¶ 49-50; *see also* Ex. F. On May 4, 2022, Plaintiff brought action against Defendants in the Superior Court of New Jersey. *See* D.E. 1-1. On June 2, 2022, Defendants removed the action to this Court based on diversity jurisdiction and federal question jurisdiction. D.E. 1. Plaintiff filed an Amended Complaint on June 30, 2022, asserting a cause of action for recovery of unpaid benefits under ERISA § 502(a)(1)(B), which Defendants moved to dismiss on July 26, 2022. D.E. 6, 10. On January 3, 2023, the Court granted Defendants' motion

---

[7] Defendants' "Statement of Facts and Procedural History" section notes that while "Plaintiff alleges that it appealed Cigna's determination on multiple occasions and exhausted all administrative remedies," the administrative record "contains no other appeals" other than Exhibit F to Plaintiff's Complaint, which "only pertains to the appeal of CPT 63047-59." Defs. Br. at 2. Failure to exhaust administrative remedies an affirmative defense. To the extent that Defendants are arguing that dismissal is appropriate due to this failure, if "[i]t cannot be conclusively established from the complaint whether [the plaintiff] failed to adequately pursue [his] administrative remedies or whether it would have been futile for [him] to have done so," dismissal is not warranted. *Am. Chiropractic Ass'n v. Am. Specialty Health Inc.*, 625 F. App'x 169, 173 (3d Cir. 2015); *see also In re Randall*, 358 B.R. 145, 163 (Bankr. E.D. Pa. 2006) ("An affirmative defense can [only] be considered in the context of a motion to dismiss when its validity is clear from the facts asserted by the plaintiff in her complaint or not otherwise in dispute.").

to dismiss, and gave Plaintiff leave to amend its Complaint.  D.E. 24.  Plaintiff filed a Second Amended Complaint on February 16, 2023, and the instant motion followed.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint that fails "to state a claim upon which relief can be granted[.]"  Fed. R. Civ. P. 12(b)(6).  For a complaint to survive dismissal under Rule 12(b)(6), it must contain enough factual matter to state a claim that is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Further, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims."  *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016).  In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009).  Restatements of the elements of a claim are legal conclusions, and therefore, not entitled to a presumption of truth.  *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) (citation omitted).  The Court, however, "must accept all of the complaint's well-pleaded facts as true."  *Fowler*, 578 F.3d at 210.  Even if plausibly pled, however, a complaint will not withstand a motion to dismiss if the facts alleged do not state "a legally cognizable cause of action."  *Turner v. J.P. Morgan Chase & Co.*, No. 14-7148, 2015 WL 12826480, at *2 (D.N.J. Jan. 23, 2015).

6

## III.    ANALYSIS

ERISA governs the rights and obligations of beneficiaries of and participants in employee benefit plans.  ERISA section 502(a)(1)(B) allows a beneficiary or participant to bring a civil action to recover benefits due to her under a plan, and provides as follows:

> A civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

29 U.S.C. § 1132(a)(1)(B).

In evaluating a claim under section 502(a)(1)(B), a court reviews the administrator's benefits determination *de novo* unless the plan gives the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan.  *Saltzman v. Indep. Blue Cross*, 384 F. App'x 107, 111 (3d Cir. 2010) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 (1989)).  Where the benefit plan does confer discretion, "the court reviews the benefits denial using an 'arbitrary and capricious' standard, which in the ERISA context is identical to review for abuse of discretion."  *Atl. Spinal Care v. Aetna*, No. 12-6759, 2014 WL 1293246, at *7 (D.N.J. Mar. 31, 2014) (citing *Firestone Tire & Rubber Co.*, 489 U.S. at 120-21).

Here, Plaintiff concedes that the Plan gives discretion to Cigna.  Plf. Opp. at 5. Nevertheless, Plaintiff argues that the Court should apply the *de novo* standard of review because "the record is simply devoid of any analysis for the Court to defer."  *Id.* at 4-6.  In support, Plaintiff relies on the Third Circuit's holding in *Gritzer v. CBS, Inc.*, where the Circuit found that the *de novo* standard of review was appropriate, notwithstanding the fact that the plan conferred discretion on the plan trustee, because the trustee "never made any effort to analyze [the] claims much less to advise them of what the analysis disclosed," thus there was "no analysis or reasoning to which the Court may defer."  *Gritzer v. CBS, Inc.*, 275 F.3d 291, 295-96 (3d Cir. 2002) (internal

7

quotation marks and citations omitted)).  Here, however, Plaintiff's allegations and the documents on which the allegations are based demonstrate that Cigna did analyze the claims and provide reasoning for its determinations.  For example, the SAC alleges that Cigna indicated on the Explanation of Benefits that it denied reimbursement for CPT codes 63047 and 77003 because these codes were "incidental to a code billed on the same date."  SAC ¶¶ 28, 35 (citing Ex. C at 2-3); *see also* Ex. C (indicating the bases for the reimbursement amount for each CPT code through "adjustment reason codes" and "notes").  And the appeal letter that Plaintiff relies on provides that Cigna upheld its original decision to deny coverage for CPT code 63047 based on its review of "how the primary service relates to the secondary services," for which the "data show[ed] us" that the claimed services should have been "bundled."  Ex. F at 2-3.  Accordingly, because the Plan construes discretion on Cigna and because Cigna exercised such discretion, the Court applies the arbitrary and capricious standard of review.

"Under the arbitrary and capricious standard, the district court may overturn a decision of the plan administrator only if it is without reason, unsupported by the evidence, or erroneous as a matter of law."  *Saltzman*, 384 F. App'x at 111 (internal quotation marks and citations omitted).  In other words, "actions reasonably consistent with unambiguous plan language are not arbitrary."  *Id.* at 112 (citation omitted).  Here, the Plan provides that the "Maximum Reimbursable Charge" is determined by taking whatever amount is less between "the provider's normal charge for a similar service" and 110% of a schedule similar to Medicare's, or "[i]n some cases," by taking whatever amount is less between "the provider's normal charge for a similar service" and "the 80th percentile of charges made by providers" of such services in the geographic area.  The Plan continues that Cigna will then reimburse 60% of the "Maximum Reimbursable Charge" after the patient's deductible has been met.

Accordingly, to state a claim for relief, Plaintiff must plausibly allege how Defendants acted in contravention to these terms and why Plaintiff is therefore entitled to relief. *IGEA Brain & Spine, P.A. v. Cigna Health & Life Ins. Co.*, No. 17-13726, 2018 WL 2427125, at *2 (D.N.J. May 29, 2018) (citations omitted). Defendants maintain that Plaintiff fails to do so. Plaintiff asserts that Defendants violated the terms of the Plan by denying reimbursement for four of the eight CPT codes billed by the primary surgeon (63047, 77003, 69990, 20930) and two of the five CPT codes billed by the assistant surgeon (63047 and 69990). SAC ¶¶ 21, 24, 25; Ex. C. This assertion, which is the extent of the allegations made with respect to two of the CPT codes (69990 and 20930), is conclusory. And the allegations as to the remaining two CPT codes for which reimbursement was denied (63047 and 77003) merely express disagreement with Cigna's determination that the codes were incidental to other codes that were billed. *See id.* ¶¶ 29-38. As to CPT code 63047, Plaintiff alleges that because the Center for Medicare & Medicaid Services ("CMS") "*allows*" CPT code 63047 to be billed with CPT code 22633, so long as it is also billed with "modifier 59" to "override" the conflict between the codes, this code should have been paid at "either the billed amount of $55,254.00, the 80th percentile-based amount of $64,000.00 or a CMS based amount of $1,366.02" but instead was "erroneously denied." *Id.* ¶¶ 29-33 (emphasis added). As to CPT code 77003, Plaintiff alleges that "[a]ccording to" CMS guidelines, "there is no conflict when CPT code 77003 is billed with any of the CPT codes billed for the Primary Surgeon" therefore it was "not incidental to any of the codes" and should be paid "either the billed amount, the 80th percentile-based amount or a CMS based amount." *Id.* ¶¶ 36-37. But Cigna has the discretion "to make factual determinations in connection with its review of claims[.]" Ex. D at 55. And alleging that Cigna is "allow[ed]" to "override" a conflict between two codes and concluding that another code was "not incidental to any of the codes" only suggests that Plaintiff

disagrees with Cigna's determinations—not that Cigna abused its discretion in reaching them. *See Atl. Plastic & Hand Surgery, PA v. Anthem Blue Cross Life & Health Ins. Co.*, No. 17-4600, 2018 WL 1420496, at *15 (D.N.J. Mar. 22, 2018) (dismissing the plaintiff's ERISA claim because of the plaintiff's failure to identify any provision in the plan that required the defendants to pay the alleged rate); *see also Atl. Spinal Care* 2014 WL 1293246, at *11 (granting summary judgment in the defendant's favor because, in relevant part, while the defendant denied coverage for a service as incidental to another service, the defendant had the discretion to determine whether the services were covered by the plan and the plaintiff failed to suggest why this determination was an abuse of discretion).

Plaintiff next alleges that Defendants violated the terms of the Plan by "woefully underpa[ying]" four of the CPT codes billed by the primary surgeon (20936, 22633, 22853, 22840) and three of the CPT codes billed by the assistant surgeon (22633, 22853, 22840). SAC ¶¶ 21, 24, 25; Ex. C. With respect to CPT code 20936, Plaintiff asserts that while this code was reimbursed at $219.77, it should have been reimbursed "at the billed amount, which is $2,601.00 or the 80th percentile of charges made by providers of such service, which is $3,500."[8] SAC ¶¶ 39-43. As to CPT codes 22633, 22853, and 22840, Plaintiff alleges that these codes appear to have been "reimbursed at the Zelis ERS amount," that it is "unclear how [the Zelis ERS amount] is calculated," and that "nothing in the SPD [] indicates that the 'Zelis ERS amount' is consistent with the maximum reimbursable charge."[9] *Id.* ¶ 45-47. But Plaintiff does not allege why this

---

[8] For the reasons set forth below, this allegation falls short because it is premised on a mischaracterization of the terms of the Plan, and in turn, fails to adequately allege how the reimbursement violated the terms of the Plan, and why Plaintiff is entitled to additional benefits under the Plan.

[9] Plaintiff alleges the same as to CPT codes 20936 and 22849. SAC ¶¶ 44, 46. Based on a review of the exhibits, the Court does not credit these allegations. Nor does the Court credit the allegations

entitles Plaintiff to additional benefits under the Plan.  Nor does Plaintiff allege that the rates priced by Zelis (a third-party claims administrator), are in fact inconsistent with 60% of the "Maximum Reimbursable Charge" amounts.  Without more, the Court cannot reasonably infer that additional benefits are due under the Plan.  *See Robinson v. Anthem Blue Cross Life & Health Ins. Co.*, No. 17-4600, 2018 WL 6258881, at *4 (D.N.J. Nov. 30, 2018) (dismissing the plaintiff's unpaid benefits claim because the plaintiff did not allege how the payment made by defendants fell "below the 'maximum allowed' rate for out-of-network services under the [p]lan" or "what amount [the] [p]laintiff should be entitled to" under the plan); *see also IGEA Brain & Spine, P.A.*, 2018 WL 2427125, at *2 (dismissing the plaintiff's unpaid benefits claim because the plaintiff failed to allege how the relevant plan was violated and why the plaintiff was entitled to further reimbursement under the plan).

Defendants also argue that Plaintiff's allegations fail on an additional ground: that the SAC misconstrues the terms of the Plan, and in turn, fails to adequately allege that Defendants acted in contravention to the Plan.  Defs. Br. at 9-11.  The Court agrees.  While the SAC quotes the "Maximum Reimbursable Charge" provision which provides, in part, that "the provider's normal charge for a similar service" may determine the benefit due, the remaining allegations in the SAC make no reference to the "normal charge."  They instead allege entitlement to the "billed amount."

---

made as to CPT codes 22633, 22853, and 22840 to the extent that they apply to the primary surgeon's services.  "Where there is a disparity between a written instrument annexed to a pleading and an allegation in the pleading based thereon, the written instrument will control." *See ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 n.8 (3d Cir. 1994).  Here, the exhibit that references the Zelis ERS amounts only does so as to the charges that correspond with CPT codes 22633, 22853, 22840 for the assistant surgeon.  *See* Ex. C at 5.  There is no indication that any of the charges for the primary surgeon's services (CPT codes 20936, 22633, 22853, and 22840) were reimbursed at Zelis ERS amounts as the SAC alleges.  *See* Ex. C at 2-3.  As to CPT code 22849, neither the SAC nor the exhibits make any other references to this code; thus, it appears that it was listed in error.

*See* SAC ¶¶ 32, 37, 41, 43.  But "[t]he distinction between the terms 'billed charge' and normal charge' is not . . . merely semantic or hypothetical,"[10] and the Plan does not provide that the "billed amount" may serve as an alternate basis for paying the claims.[11]  Likewise, while Plaintiff points to the "Maximum Reimbursable Charge" as entitling it to relief, Plaintiff critically fails to allege that for the services at issue here—out-of-network, outpatient services—the benefit due is not the "Maximum Reimbursable Charge," but rather 60% of the "Maximum Reimbursable Charge" after the patient has met their deductible.  Section 502(1)(a)(B) requires a plaintiff to demonstrate his entitlement to "benefits due to him *under the terms of the plan*."  29 U.S.C. § 1132(a)(1)(B)).  Without accurately pleading the relevant provisions of the Plan which allegedly entitle Plaintiff to additional reimbursement, Plaintiff fails to state a claim.  *See  Atl. Plastic & Hand Surgery, PA*, 2018 WL 1420496, at *10-12 (granting the defendant's motion to dismiss because while the complaint alleged that the defendants "failed to pay the usual and customary charge" for the out-of-network services, the plaintiff "fail[ed] to identify any specific provision in the [p]lan from which the [c]ourt c[ould] infer that [the] [p]laintiffs were entitled to compensation at [said rate] for out-of-network services.").[12]

---

[10] *Franco v. Conn. Gen. Life Ins. Co.*, 289 F.R.D. 121, 138 (D.N.J. 2013), *aff'd*, 647 F. App'x 76 (3d Cir. 2016).

[11] Plaintiff's opposition emphasizes that Plaintiff is not claiming "entitle[ment] to full billed charges," arguing that "[n]owhere in the SAC does Plaintiff state such a proposition."  Plf. Opp. at 9.  The Court disagrees.  *See, e.g.*, SAC ¶ 32, 37, 41, 43.

[12] *See also Pro. Orthopaedic Assocs., PA v. 1199 Nat'l Benefit Fund*, 16-4838, 2016 WL 6900686, at *6 (S.D.N.Y. Nov. 22, 2016), *aff'd sub nom. Pro. Orthopaedic Assocs., PA v. 1199SEIU Nat'l Benefit Fund*, 697 F. App'x 39 (2d Cir. 2017) (dismissing the plaintiff's claim for unpaid benefits because the plaintiff failed to ground her claim in the language of the plan, thus, the complaint was "completely devoid of her required specificity necessary to maintain a claim under Section 502(a)(1)(B))."

**IV.    CONCLUSION**

Defendants' motion to dismiss, D.E. 42, is **GRANTED**.  Plaintiff has thirty (30) days to file another amended complaint, if it so chooses, consistent with this Opinion.  If Plaintiff fails to file a third amended complaint, this matter will be dismissed with prejudice.  This is the last time that the Court will grant Plaintiff leave to amend.  An appropriate Order accompanies this Opinion.

Dated: July 28, 2023

John Michael Vazquez, U.S.D.J.